UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

STEVEN JOEL VANNOY and                              Case No.: 13-40586
                                                     Chapter 13
PATRICIA ANN VANNOY,                                 Hon. Walter Shapero

    Debtors.
_____/

## OPINION IN CONNECTION WITH OBJECTIONS TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

The plan before the Court for confirmation is the Debtors' Second Amended Plan which, among other things, provides (1) a plan length of 60 months; (2) a plan payment of $1,203.22 per month; (3) a minimum total dividend of about $3,351.00 to Class 9 (unsecured) creditors over the life of the plan. Debtors' monthly income as shown in Schedule I is $6,743.69, all but $300.00 of which is derived from Patricia Vannoy's compensation. Her monthly payroll deductions aside from such for dental and vision insurance, include deductions for Life Insurance, hereinafter noted 401(k) Plan contributions, 467(b) plan contributions, and charity. Steven Vannoy is age 52 and Patricia Vannoy is 50.

Their Schedule J noted potential increases in auto insurance premiums and water expenses over those set forth. Debtors initially scheduled unsecured non-priority debts totaling $134,524.69. Of the multiple objections to confirmation, the first contested item is monthly parochial school tuition expense of approximately $1,008.42 per month, or some $12,000.00 per year for tuition, books and clothes. The Debtors have two children, one in the eighth grade and one in high school, presently enrolled in two different parishes and going to Catholic schools. Debtors are practicing Catholics, and Mrs. Vannoy is a lifelong Catholic having herself gone to

Catholic schools. Both children have gone to Catholic schools since their schooling began. Patricia Vannoy testified primarily about her strong belief in the superiority of a parochial school education for her children, both as respects core academics, but also for the religious and other values instilled in the children, which she believes are lacking in the local available public schools. Through her own personal research, she also believes that test scores at the involved parochial schools are generally higher than those of local public schools. Amended Schedule J also shows charitable contributions of $240.00 per month representing required tithing of at least 10% of income. Only Patricia Vannoy is employed, and their only other source of income is $300.00 from a rental property they own, which is attributed to Steven Vannoy. He was also previously the operator of his own businesses, which are now defunct. He testified that while he currently has some medical knee issues, Debtors have mutually decided he will not go to work, apparently even if and when he is able to, and will instead take care of the children.

The second involved item relates to the aforementioned rental property owned by Debtors and located at 4553 Curtis, Dearborn, Michigan. It is a two unit residential property which Debtors lease out, usually to University of Michigan - Dearborn students. Presently the monthly rent is $300.00 for the one unit that is rented. There is no reasonable expectation for renting the other unit until possibly fall of 2014. The Plan proposes a cram down of the mortgage debt on this unit from $104,506.00 to $40,000.00, and monthly payments of $787.00. Schedule J expenses in reference to this property also show $75.00 for insurance and $166.67 for property taxes. The indicated monthly rental payment of $300.00 does not include any needed repairs, including repairs to the roof that Debtors said are needed. Thus, on a current basis, monthly income is currently $300.00 (with a potential of $600.00) against an expense of $1,078.00 (not taking into account any repairs and maintenance).

There were also some objections to the Debtors' expenses for life insurance, automobile insurance, cell phone and cable/internet expenses. The Court does not believe that such were of sufficient significance to, in and of themselves, materially affect the result.

Other relevant facts are:

(1). Schedule I indicates with reference to these above noted items, Patricia Vannoy makes 401(k) Plan contribution of $391.04 per month, and a 457(b) Plan contribution of $195.52 per month;

(2). Schedule B lists a 457(b) plan valued at $125,000.00 and says nothing about a 401(k) plan; and

(3). Patricia Vannoy has been employed as the Director of Finance of Oakwood Hospital for some 25 years with a gross income of some $9,800.00 per month.

A requirement for confirmation is that all of Debtors' projected disposable income will be applied to make payments under the Plan. 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined in 11 U.S.C. § 1325(b)(2)(A) as income received by Debtors which is not reasonably necessary to be expended for the maintenance or support of the Debtors or their dependents.

Expenditures for the education of Debtors' children at private or parochial schools has commanded the attention of any number of courts, either within the context of § 707(b)(3) motions to dismiss, or as in this case, in the objection to Chapter 13 plan confirmation setting. See e.g., this Court's Opinion in *In re Golematis*, 2102 WL 3583154 (Bankr. E.D. Mich. 2012); *In re Maura*, 491 B.R. 493 (Bankr. E.D. Mich. 2013), and cases cited therein. A fair compendium and analysis of various courts' views may be gleaned from the trial and appellate opinions in *In re Watson*, 299 B.R. 56 (Bankr. D. R.I. 2003), affirmed 309 B.R. 652 (BAP 1st Cir. 2004), affirmed 403 F3d. 1 (1st Cir. 2005).

In this Court's view, for such expenditures to be considered reasonably necessary, something more than a mere preference for private or parochial school needs to be shown. What must be shown is what can be characterized as being a "compelling circumstance" such as the inadequacy of the public schools to meet some ongoing special needs of the student(s) involved that can demonstrably be materially better addressed in the private or parochial school. Generally speaking, some courts also seem to indicate that "special needs" ought to involve a student's learning disability or some abnormal physical or mental condition. See e.g., *In re Ehret*, 238 B.R. 85 (Bankr. D. N.J. 1999). The facts in this case do not support the existence of such and simply show Debtors' preference. Furthermore, the Court is leery about being able to conclude on this record, or being required in any event to factually develop a comparison of educational outcomes, or measure the quality of education, as between public and other schools. That is a difficult, if not impossible task and it would be inappropriate for this Court to do so in the context of the issue before it. This Court does conclude, however, that while in any given case a compelling circumstance or specific need may or may not be presented, such should not be the entirety of the inquiry or necessarily shape or dictate the end result.

Absent such a showing, and particularly applicable to this case, is what was stated by the Bankruptcy Appellate Panel in the *Watson* case, *supra*, and some other cases i.e.: that the inquiry into what is a reasonable expense in such cases must also include and take into account the extent to which the Debtors demonstrate a willingness to reduce or offset or minimize other reasonably necessary expenses; thus, the *Watson* Court at 309 B.R. 661 said:

> When considering the terms of the Chapter 13 plan, bankruptcy courts have examined the expense of private school tuition relative to the debtors other expenses, the debtors total debt obligations under the plan, and the distribution creditors would receive. See *In re Burgos*, 248 B.R. 446, 450-51. (Bankr. M.D. Fla. 2000); *In re Grawey*, 2001 WL 34076376 (Bankr.C.D. Il. Oct 11, 2001).

The Court does not doubt the sincerity of the Debtors' belief in a Catholic education for their children and its continuation, and what such might do and bring to their children's intellectual, spiritual, and general upbringing. In the appropriate case, its costs might be allowable as a necessary expense, but only if it is presented in the context of Debtors demonstrating a clear willingness and good faith effort to tighten their belts and minimize or lessen other living expenses in a way that will appropriately counterbalance what they are forcing the unsecured creditors to give up. As presently before this Court on the existing record, this is not such a case. What basically leads to that conclusion are a combination of:

(A). The proposed retention of the rental property at a monthly operating loss of material proportion;

(B). Proposed continuation of existing monthly expenditures for 401(k) and 467(b) plans and charitable contributions; and

(C). Debtors' monthly budget that in essence continues their existing lifestyle with little or no apparent change.

Those facts ought to be relevantly considered in conjunction with the facts of (1) the apparent decision that Steven Vannoy has voluntarily taken himself out of the work force apparently to be a stay at home father in a situation where one of the Debtors' children is in high school and one will be entering high school soon; and (2) Patricia Vannoy, given her position and some 25 years of service with her current employer, likely continuing to receive compensation at her current level, if not more.

Accordingly, based on the existing record for the indicated reasons, and given the amount of the unsecured debt, the proposed payments to that class, and the potential for materially greater payments from the indicated sources, the Court declines to confirm the existing proposed Plan.

That said, time has passed in this case and given the basis for this decision and likely facts occurring since the hearings which may bear on the results, such dictate giving the Debtor an appropriate period of 30 days from the entry of the order effectuating this opinion within which to propose and/or negotiate a new plan that might be confirmable.

Debtors shall present an appropriate order.

.

**Signed on June 05, 2014**

                                          **/s/ Walter Shapero**
                                **Walter Shapero**
                                **United States Bankruptcy Judge**